UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------X
ANNE-MARIE ALMONORD,

          Plaintiff,

       - against -

KINGSBROOK JEWISH MEDICAL CENTER,
WILLIAM MORSE, DAWN PASSERO,
JOHN DOES and JANE DOES,

          Defendants.
--------------------------------------------------X
GARAUFIS, District Judge.

<u>MEMORANDUM AND ORDER</u>
04-CV-4071 (NGG) (RML)

      Plaintiff Anne-Marie Almonord ("Plaintiff") alleges that Defendants Kingsbrook Jewish

Medical Center ("Kingsbrook"), William Morse ("Morse"), who is sued in his individual

capacity and in his official capacity as a human resources representative for Kingsbrook, and

Dawn Passero ("Passero"), who is sued in her individual capacity and in her official capacity as a

manager for Kingsbrook, discriminated and retaliated against Plaintiff in violation of Title VII of

the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"); New York State's Human

Rights Law, N.Y. Exec. Law §§ 290, *et seq.* ("NYSHRL"); and New York City's Human Rights

Law, N.Y.C. Admin. Code §§ 8-101, *et seq.* ("NYCHRL").

      Kingsbrook and Passero have moved for summary judgment. Morse has moved to

dismiss for lack of personal jurisdiction and, in the alternative, for summary judgment. For the

reasons set forth below, the motions for summary judgment are GRANTED with respect to

discrimination and GRANTED in part and DENIED in part with respect to retaliation. Morse's

motion to dismiss is DENIED.

# I.      Background

Because Defendants move for summary judgment, this court must view the evidence in the light most favorable to Plaintiff and must draw all permissible inferences from the submitted affidavits, exhibits, interrogatory answers, and depositions in favor of Plaintiff. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Vann v. City of New York, 72 F.3d 1040, 1048-49 (2d Cir. 1995). Even in a fact-intensive employment discrimination case, however, the court will not accept as fact mere allegations lacking evidentiary support. Abdu-Brisson v. Delta Air Lines, 239 F.3d 456, 466 (2d Cir. 2001).[1]

## A.      Plaintiff's Employment History

Plaintiff, who identifies herself as Black and of Haitian national origin, was first employed by Kingsbrook in 1989 as a part-time receptionist and clerk typist. (Defs. 56.1 St. ¶ 2; Pl. 56.1 Resp. ¶ 2.) Between 1995 and December 18, 2000, Plaintiff worked as a Patient Accounts Clerk in Kingsbrook's Business Office. (Defs. 56.1 St. ¶ 4; Pl. 56.1 Resp. ¶ 4.) Her responsibilities included medical billing and collections work for the Inpatient Billing Department. (Defs. 56.1 St. ¶ 4; Pl. 56.1 Resp. ¶ 4.) On December 18, 2000, Plaintiff was promoted to Supervisor of Outpatient Billing; she remained in that position until her termination in 2002. (Defs. 56.1 St. ¶ 5; Pl. 56.1 Resp. ¶ 5.) While working in that position, she reported to

---

[1] When responding to a motion for summary judgment, the non-moving party – in this case, Plaintiff – "may not rest upon . . . mere allegations or denials[.]" Fed. R. Civ. P. 56(e). Instead, the non-moving party, "by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Id. It follows that courts are prohibited from relying on mere allegations when deciding whether to grant summary judgment. "[U]nsupported allegations do not create a material issue of fact." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000).

Passero, Kingsbrook's Manager of Outpatient Billing, who is Caucasian and was born in the United States.  (Defs. 56.1 St. ¶¶ 7, 9; Pl. 56.1 Resp. ¶¶ 7, 9.)

### B.    Plaintiff's and Passero's Relationship

#### 1.    1995 to October 2000

Plaintiff and Passero first met in 1995 while working under different supervisors in Kingsbrook's Business Office.  (Defs. 56.1 St. ¶ 19; Pl. 56.1 Resp. ¶ 19.)  Plaintiff does not allege that Passero discriminated against her while they were co-workers.  (Defs. 56.1 St. ¶¶ 25-26; Pl. 56.1 Resp. ¶¶ 25-26.)

Plaintiff and Passero offer different accounts of their relationship.  Passero, who describes Plaintiff as a personal friend, testified that the two of them would often discuss personal matters and eat lunch together and that she often drove Plaintiff to the bus stop on her way home from work.  (Defs. 56.1 St. ¶¶ 20-23.)  Passero further testified that she was one of the only Kingsbrook employees to attend Plaintiff's mother's wake in 1997.  (Id. ¶ 24.)  Plaintiff objects to Passero's characterization of the two of them as personal friends.  (Pl. 56.1 Resp.  ¶¶ 20, 22, 23, 25, 36; Pl. Dep. Tr. at  61-68.)  Plaintiff claims that she considered Passero not a "friend," but rather a co-worker toward whom she was "friendly," just as she was friendly toward other co-workers.  (Pl. 56.1 Resp.  ¶¶ 20, 22, 23, 25, 36; Pl. Dep. Tr. at 61-68.)  Plaintiff testified that Passero drove her halfway home only a "few times," that they had lunch together only when with a larger group of co-workers, and that she and Passero discussed personal issues only "on occasion."  (Pl. Dep. Tr. at 62-63.)  Plaintiff does not specifically recall Passero attending her mother's wake but does not deny that Passero was there.  (Id.)

### 2.     October 2000 to April 2002

In October 2000, after Irving Peters, who was Black, retired, Passero was promoted to Manager of Outpatient Billing.  (Defs. 56.1 St. ¶¶ 33-34; Pl. 56.1 Resp. ¶¶ 33-34.)  Shortly after her promotion, Passero began looking for a person to fill her previous position, Supervisor of Outpatient Billing.  (Defs. 56.1 St. ¶ 35; Pl. 56.1 Resp. ¶ 35.)  Passero claims she encouraged Plaintiff to apply for the position based on both their friendly relationship and Plaintiff's qualifications.  (Passero Dep. Tr. at 58-59, 64; Pl. Dep. Tr. at 287.)  Passero interviewed Plaintiff and Denise Alward, another Black employee of Kingsbrook, for the position.  (Passero Aff. ¶ 14.)  Passero testified that she did not think it was necessary to interview external candidates, because she and Plaintiff "could work well together," were "very friendly," and had a "nice relationship."  (Id.)

On December 18, 2000, Passero promoted Plaintiff to Supervisor of Outpatient Billing.  (Defs. 56.1 St. ¶ 41; Pl. 56.1 Resp. ¶ 41.)  In this position, Plaintiff supervised fifteen employees.  (Pl. Dep. Tr. at 69-73.)  Her responsibilities included (1) implementing, explaining, and enforcing the hospital's employment policies, (2) organizing various billing and collection processes, and (3) preparing billing reports.  (Defs. 56.1 St. ¶¶ 49-51; Pl. 56.1 Resp. ¶¶ 49-51.)  From the time of Plaintiff's promotion until early 2002, Kingsbrook employed seventeen people in the Outpatient Billing Department.  (Defs. 56.1 St. ¶¶ 46-47; Pl. 56.1 Resp. ¶¶ 46-47.)  With the exception of Passero and one clerk, the remaining fifteen employees were Black, including one employee who was of Haitian descent.  (Defs. 56.1 St. ¶¶ 47-48; Pl. 56.1 Resp. ¶¶ 47-48.)

Passero testified that Plaintiff had difficulty in her new position.  (Defs. 56.1 St. ¶ 52.)  Passero provides numerous examples of specific instances in which Plaintiff failed to perform

her responsibilities and supervise her subordinates properly.[2]  (Defs. 56.1 St. ¶¶ 54-56, 58, 61, 66, 88-89, 90-95.)  Plaintiff, however, repeatedly and strenuously denies that she had any problems performing her new duties.  (Pl. 56.1 Resp. ¶¶ 52-54, 58, 61, 68, 70, 109, 111, 120-24).

In January 2001, Plaintiff and Sylvia Taylor, a clerk whom Plaintiff supervised, had an argument.  (Defs. 56.1 St. ¶ 55.)  Kingsbrook claims that when Taylor refused to follow an instruction given by Plaintiff, Plaintiff screamed at Taylor.  (Id.)  Plaintiff, however, denies Kingsbrook's allegation that she screamed at Taylor, and claims that Taylor became hostile toward her without provocation.  (Pl. 56.1 Resp. ¶ 55.)  Kingsbrook alleges that Plaintiff did not effectively control attendance problems occurring within the department.  (Defs. 56.1 St. ¶ 56.)  Plaintiff denies this.  (Pl. 56.1 Resp. ¶ 56.)

Kingsbrook alleges that Passero often counseled Plaintiff regarding how to meet the requirements of Plaintiff's new position.  (Defs. 56.1 St. ¶ 57.)  Plaintiff denies this.  (Pl. Dep. Tr. at 158-60.)  Kingsbrook also alleges that Plaintiff did not regularly submit various billing reports.  (Defs. 56.1 St. ¶¶ 58-61.)  Plaintiff denies this as well.  (Pl. 56.1 Resp. ¶¶ 58-61.)

On August 15, 2001, Passero sent Plaintiff an email that outlined Plaintiff's ongoing responsibilities.  (Defs. 56.1 St. ¶ 63.)  Passero claims that this email was written in order to inform Plaintiff that she was not performing her required duties.  (Id.)  Plaintiff claims that this was instead a "normal work-related . . . email."  (Pl. 56.1 Resp. ¶¶ 63-65.)  Passero testified that Plaintiff continued to neglect her responsibilities despite continually being reminded what was expected of her.  (Defs. 56.1 St. ¶ 66; Passero Dep. Tr. at 105-06.)

---

[2] Examples of Plaintiff's poor supervision include failing to put notes in the files of late employees, as was required by Kingsbrook, and micro-managing her subordinates.  (Passero Dep. Tr. at 88-89, 117-21.)

Plaintiff testified that in September or October 2001, Passero mocked her accent, specifically her pronunciation of the word "roof." (Pl. Dep. Tr. at 138, 158.) Plaintiff also testified that Passero yelled at her and "became hostile." (Pl. 56.1 Resp. ¶ 71.) Plaintiff testified that she told Passero she was returning to graduate school and that Passero responded, "You and that education, it must be a Haitian thing." (Pl. Dep. Tr. at 136.) Plaintiff also asserted that Passero made other references to her Haitian decent, although she could not identify any other such references. (Id. at 292-93.)

In September or October 2001, Plaintiff spoke with Mohamed Hebela, Chief Financial Officer of Kingsbrook, regarding her difficulties with Passero. (Pl. Dep. Tr. at 192.) She complained that Passero yelled at her and mimicked her accent. (Id.) Plaintiff concedes that she did not inform Hebela that she thought Passero was discriminating against her based on her race or national origin. (Id.)

On December 11, 2001, at Kingsbrook's holiday party, Plaintiff and Passero had a disagreement the details of which are disputed. Passero claims that she had asked Plaintiff to attend the party from 3:00 p.m. to 4:00 p.m. and to then return to the office so Passero could attend the second half of the party. (Defs. 56.1 St. ¶¶ 73-74.) Passero claims that Plaintiff did not return until nearly 5:00 p.m. (Defs. 56.1 St. ¶ 76.) When Passero asked Plaintiff why she returned so late, Plaintiff responded, "You told me you don't like to party." (Id.) Passero told Plaintiff that she was disappointed in her. (Defs. 56.1 St. ¶¶ 76-78.) Passero testified that Plaintiff then began to scream at her. (Id.) Plaintiff, however, contends that she and Passero attended the party together and that shortly after they arrived, Passero left because she did not like to socialize with the "staff." (Pl. 56.1 Resp. ¶ 73.) Plaintiff testified that she remained at the

party and socialized with her co-workers, that Passero then started to scream at her for socializing with the other employees, and that Plaintiff was so upset by this altercation that she called in sick the next day.  (Id. ¶ 79.)

On December 13, 2001, Plaintiff met with John Schmitt, Kingsbrook's Comptroller.  (Pl. 56.1 Resp. ¶ 81.)  In her Rule 56.1 Statement, Plaintiff claims, but cites no evidence showing, that she complained to Schmitt about Passero's discriminatory conduct, including mimicking her accent and consistently referring to her Haitian national origin, although Plaintiff admits she did not use the word "discrimination."[3]  (Pl. 56.1 Resp. ¶¶ 80-82.)  At his deposition, Schmitt testified that he did not recall Plaintiff complaining about discriminatory conduct by Passero.  (Schmitt Dep. Tr. at 13, 22-23.)  He recalled only that she complained about an incident at the holiday party.  (Id.)  Passero testified that a few days after this incident, she and Plaintiff exchanged Christmas gifts and cards with personal messages and decided to put the incident behind them.  (Defs. 56.1 St. ¶ 84; Passero Dep. Tr. at 149.)  Plaintiff denies that this reconciliation occurred, but again fails to cite any supporting evidence.  (Pl. 56.1 Resp. ¶ 84.)

On March 26, 2002, Plaintiff attended a meeting in place of Passero, who was out sick.  (Defs. 56.1 St. ¶ 90; Pl. 56.1 Resp. ¶ 90.)  At this meeting, Plaintiff stated that some of the figures in a billing report prepared by the Outpatient Billing department were inaccurate.  (Defs.

_____

[3] Although Plaintiff claims that she complained to Schmitt about Passero's discrimination, Paragraphs 80 and 81 of Plaintiff's 56.1 Response do not contain any citations to admissible evidence in the record, not even to a sworn affidavit.  Further, in Paragraph 82, Plaintiff cites to her deposition transcript at pages 370-71.  However, Plaintiff did not submit those pages of the transcript into evidence.  Under Local Civil Rule 56.1(d), "[e]ach statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact . . . must be followed by citation to evidence which would be admissible, set forth as required by Federal Rule of Civil Procedure 56(e)."  Plaintiff's unsubstantiated assertions and uncited allegations do not suffice to create a genuine issue of material fact at the summary judgment stage.

56.1 St. ¶ 95; Pl. 56.1 Resp. ¶ 95.)  After Hebela asked Passero about the accuracy of the report,

Passero asked Plaintiff for the basis for her belief that the figures were inaccurate.  (Defs. 56.1 St.

¶¶ 98-100.)  Passero claims that Plaintiff could not fully explain her reasoning and had actually

relied on information provided to her by the Supervisor of Medical Records.  (Defs. 56.1 St. ¶¶

100-01.)  Plaintiff denies this and claims that Passero did not understand the billing reports.[4]  (Pl.

56.1 Resp. ¶ 100.)  Plaintiff also claims that after Passero was questioned by Hebela, Passero told

Plaintiff to "keep her mouth shut."  (Id.)

    In March 2002, Passero began the process of completing Plaintiff's 2001 performance

evaluation.  (Passero Dep. Tr. at 77-78.)  For the purposes of that evaluation, a rating of "2"

means "exceeds standards," a "1" means "meets standards," and a "0" means "does not meet

standards."  (Id. at 176-79.)  Passero testified that she was "extremely conflicted" while

completing Plaintiff's performance report.  (Id. at 77-78.)  She testified that although she felt

Plaintiff deserved a rating of all "0's," in a draft evaluation, which she never signed or submitted,

she rated Plaintiff all "1's" due to their friendship.  (Defs. 56.1 St. ¶¶ 108-10; Passero

---

[4] Once again, Plaintiff cites to a section of her deposition transcript, page 227, that she
has not submitted into evidence.  (Id.)

Aff. ¶ 66, Exs. M, N.)  Plaintiff asserts that the reason Passero gave her all "1's" was she did in fact "meet standards."[5]  (Pl. 56.1 Resp. ¶ 109.)

On April 9, 2002, Passero conferred with Hebela about Plaintiff's continued poor performance.  (Defs. 56.1 St. ¶¶ 117-19.)  Passero told Hebela that she had concluded that Plaintiff should not continue working as a supervisor.  (Id.)  After the meeting, Passero considered three options: (1) hire another supervisor to assist Plaintiff to perform the duties that Plaintiff could not perform on her own, (2) demote Plaintiff to a non-supervisory position, and (3) terminate Plaintiff's employment.  (Id. ¶ 119.)  Passero consulted Nancy Cook, the supervisor of Inpatient Billing, about having Plaintiff return to her former position.  (Id. ¶ 122.)  Cook told Passero that demoting a supervisor would have a bad impact on employee morale.  (Id.)  Passero concluded that she would have to put her personal feelings aside and terminate Plaintiff. (Passero Aff. ¶ 70, Ex. N.)  On April 10, 2002, Passero emailed Hebela to say that she would do so.  (Id.)

Passero contacted Morse, Kingsbrook's Manager of Employee Relations, to discuss the termination procedure.  (Defs. 56.1 St. ¶ 127.)  Despite Morse's initial concerns, he and Passero decided to give Plaintiff ninety days notice so that she could find a new job.  (Id.)  On April 12,

---

[5] In support of her claim that she fulfilled her responsibilities, Plaintiff cites a letter of recommendation submitted by Hebela in support of Plaintiff's application to graduate school and the draft 2001 performance evaluation that Passero prepared in March 2002 but never submitted. (Pl. 56.1 Resp. ¶ 52.)  The letter of recommendation written by Hebela on October 21, 2001 was intended to support Plaintiff's application to return to school and not to constitute an evaluation of Plaintiff's job performance.  (Hebela Dep. Tr. at 75-76.)  It is undisputed that the performance review was an unsigned draft that contained many negative comments about Plaintiff's performance.  (Passero Aff. Ex. I.)  The evaluation states that "Anne-Marie needs to work on her follow-up," "needs to work more with the staff," and "needs to work on her cavalier attitude towards her job."  (Id.)  Passero told Hebela that Plaintiff deserved all "0's" on her performance review.  (Passero Aff. ¶ 66, Exs. M, N.)

2002, Passero met with Plaintiff to inform her that she would be terminated as of July 12, 2002. (Defs. 56.1 St. ¶ 129; Pl. Dep. Tr. at 229-31; Passero Aff. ¶ 74, Ex. X.)  Plaintiff testified that she believed Passero made the decision to terminate her employment after the March 26, 2002 meeting.  (Pl. Dep. Tr. at 303.)  Plaintiff now claims, however, that the true reasons for the termination were retaliation and discrimination.  (Pl. 56.1 Resp. ¶ 105.)

### 3.     After April 2002

On May 1, 2002, Plaintiff met with Morse to discuss her termination.  (Pl. Dep. Tr. at 231-32; Morse Dep. Tr. at 35-39.)  Morse confirmed that Plaintiff would be terminated on July 12, 2002 if she did not resign before that date.  (Plaintiff's Meeting Notes dated 5/1/02 (Daub Decl. Ex. Y).)  Morse suggested that they discuss the issue with Passero.  (Morse Dep. Tr. at 39.)  In her Declaration, Plaintiff testified that she informed Morse at the May 1, 2002 meeting that she believed her termination was based on illegal discrimination and retaliation.  (Pl. Decl. ¶ 11.)

On May 3, 2002, Passero, Plaintiff, and Morse met to discuss Plaintiff's termination. (Defs. 56.1 St. ¶ 137; Pl. 56.1 Resp. ¶ 137.)  They disagree about what happened at the meeting. (Defs. 56.1 St. ¶¶ 138-46; Pl. 56.1 Resp. ¶¶ 138-46.)  Morse concluded that due to the high level of hostility he observed between Passero and Plaintiff, it would not be feasible for them to work together any longer.  (Morse Dep. Tr. at 46-47.)  He claims that he told Plaintiff, at the May 3 meeting, that she would be terminated that day.  (Passero Dep. Tr. at 217; Morse Dep. Tr. at 46-47; Pl. Dep. Tr. at 314.)  He further claims that he expressed this decision before Plaintiff alleged that her termination was based on discrimination and retaliation.  (Morse Dep. Tr. at 46-47.) According to Plaintiff, however, only after she said that her treatment was based on blatant discrimination did Morse say, "Fine, you're fired;" Plaintiff further claims that after she informed

Morse that she was going to file a formal complaint, he repeated this phrase. (Pl. Dep. Tr. at 236-38; see also Pl. Decl. ¶ 12.)

### C. Procedural History

On February 13, 2003, Plaintiff filed a charge of unlawful discrimination and retaliation with the United States Equal Employment Opportunity Commission ("EEOC"). (Daub Decl. Ex. A.) On June 29, 2004, Plaintiff requested and received a right-to-sue letter. (Id. Ex. B.) On September 21, 2004, Plaintiff commenced this litigation. (Compl. at 1-11.)

## II. Legal Standards

### A. Summary Judgment

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law," Fed. R. Civ. P. 56(c), *i.e.*, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 69 (2d Cir. 2001) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "A fact is 'material' for these purposes if it might affect the outcome of the suit under the governing law. An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Holtz, 258 F.3d at 69 (citations and quotation marks omitted).

Defendants, because they are the moving parties, bear the burden of establishing the absence of a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). If they satisfy this burden, then Plaintiff, the non-moving party, bears the burden of "set[ting] forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The nonmovant cannot escape summary judgment merely by vaguely asserting the

existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." W. World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990) (citations and quotation marks omitted); see also Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998). Rather, the nonmovant can create a genuine issue of material fact only by citing competent, admissible evidence. Sarno v. Douglas Elliman-Gibbons & Ives, 183 F.3d 155, 160 (2d Cir. 1999).

In employment discrimination cases, district courts must be "especially chary in handing out summary judgment . . . because in such cases the employer's intent is ordinarily at issue." Chertkova v. Connecticut Gen. Life Ins. Co., 92 F.3d 81, 87 (2d Cir. 1996). "Employers are rarely so cooperative as to include a notation in the personnel file that the [adverse employment action] is for a reason expressly forbidden by law." Bickerstaff v. Vassar College, 196 F.3d 435, 448 (2d Cir. 1999) (citations omitted). Direct evidence of discrimination is therefore not required. Carlton v. Mystic Transp., Inc., 202 F.3d 129, 135 (2d Cir. 2000) ("an employer who discriminates against its employee is unlikely to leave a well-marked trail"). However, "the salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to commercial or other areas of litigation." Meiri v. Dacon, 759 F.2d 989, 998 (2d. Cir. 1985).

**B.      Employment Discrimination and Retaliation**

As a general matter, employment discrimination claims brought pursuant to the NYSHRL and NYCHRL are evaluated under the standards that apply to Title VII cases. See Cruz v. Coach Stores, Inc., 202 F.3d 560, 565 n.1 (2d Cir. 2000). Title VII prohibits racial discrimination by providing that it is unlawful "for an employer to fail or refuse to hire or to discharge any

individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race[.]" 42 U.S.C. § 2000e-2(a)(1).  Title VII prohibits retaliation by providing that it is unlawful "for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by" Title VII.  42 U.S.C. § 2000e-3(a).

## III.    Analysis

### A.    Timeliness of Claims

Defendants argue that Plaintiff's claims are time-barred.  (Defs. Br. at 18.)  Prior to commencing a lawsuit alleging discrimination or retaliation, a plaintiff must file a claim with the EEOC no later than 300 days after the alleged discriminatory or retaliatory action.  42 U.S.C. § 2000e-5(e)(1).  It is well established that in cases involving termination, the 300-day period begins to run when the employee receives "definite notice of termination, not upon his discharge."  Miller v. IT&T, 755 F.2d 20, 23 (2d Cir. 1985).  Once notice is given, the fact of continued employment does not extend the period of limitations.  Delaware State College v. Ricks, 449 U.S. 250, 257 (1980).

The 300-day period beginning on April 12, 2002, the date Plaintiff first received notice of her termination, expired on February 6, 2003.  Plaintiff filed her complaint with the EEOC on February 13, 2003.  Plaintiff claims that she did not have definite notice of her termination on April 12, 2002 and understood the conversation she had with Passero on that date to indicate that she could remain employed by Kingsbrook if she worked hard between April 12 and July 12, 2002.  (Pl. Dep. Tr. at 236.)  In support, she cites Morse's testimony that he decided to discontinue the notice period after he witnessed the hostility between Plaintiff and Passero.

(Morse Dep. Tr. at 66-69.) Plaintiff's own handwritten notes, however, created shortly after the April 12, 2002 meeting, contradict this assertion. (Daub Decl. Ex. X.) Plaintiff wrote that Passero told her "you have 3 months to resign" and "you're welcome to stay for the three months if you wish . . . [but] you have to resign by July 12." (Id.) Plaintiff's own admission therefore shows that although Morse did not decide to discontinue Plaintiff's notice period until May 3, 2002, the decision to terminate Plaintiff had in fact been made and communicated to Plaintiff on April 12, 2002. Although Plaintiff's claims regarding her April 12, 2002 termination are time-barred, the events of May 3, 2002, including Morse's decision to discontinue the notice period (the "discontinuance"), are not.

### B. Race and National Origin Discrimination

Even if Plaintiff's claims of discrimination regarding her termination were not time-barred, Plaintiff fails to make out a *prima facie* case of discrimination based on either her termination or the discontinuance. Claims of racial and national origin discrimination are governed by the burden-shifting analysis announced in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). If a plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to articulate a nondiscriminatory reason for the adverse action. Farias v. Instructional Sys. Inc., 259 F.3d 91, 98 (2d Cir. 2001). If the defense meets this burden, "the plaintiff must come forward with evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Roge v. NYP Holdings, Inc., 257 F.3d 164, 168 (2d Cir. 2001). A plaintiff establishes a *prima facie* case by proving:

> (1) membership in a protected class; (2) satisfactory job performance; (3) termination from employment or other adverse employment action; and (4) the ultimate filling of the position with an individual who is not a member

14

of the protected class, or circumstances giving rise to an inference of discrimination on the basis of plaintiff's membership in that class.

Farias, 259 F.3d at 98.

Plaintiff can satisfy the first of these elements based on her race. To satisfy the second element, that she satisfactorily performed her job, Plaintiff cites Hebela's letter of recommendation and Passero's unsigned draft performance evaluation. (Pl. 56.1 Resp. ¶¶ 52, 61, 119-24.) Kingsbrook presents substantial evidence that Plaintiff was having problems performing her duties in her supervisory position. (Defs. 56.1 St. ¶¶ 52, 55, 58-59, 61, 66, 67.) It is undisputed that Passero and Kingsbrook believed that Plaintiff deserved "0's" on her performance evaluation and that the draft contained negative comments indicating that Plaintiff did not "meet standards."[6] (Passero Aff ¶ 66, Ex. M; Passero Dep Tr. at 178-79.) Further, Hebela testified that the letter of recommendation she wrote was not meant to constitute an evaluation of Plaintiff's performance. (Hebela Dep. Tr. at 75-76.) While Kingsbrook shows that Plaintiff did not properly perform her responsibilities, Plaintiff does not provide any evidence – not even a sworn affidavit – to refute this. (Defs. 56.1 St. ¶¶ 52, 55, 58-59, 61, 66, 67; Pl. 56.1 Resp. ¶¶ 52, 61, 119-24.) It is therefore far from clear that Plaintiff can prove that she satisfactorily performed her job. Nevertheless, in an abundance of caution, for the purpose of resolving this motion the court will assume that a reasonable juror could infer from Hebela's letter and Passero's performance evaluation that Plaintiff's job performance was satisfactory.

---

[6] Even if Defendants were incorrect about Plaintiff's performance, that error in judgment alone cannot prove a *prima facie* case in the absence of any proof of racial animus. See Walters v. Columbia Presbyterian Hosp., No. 89-Civ.-1326 (MBM), 1990 U.S. Dist. LEXIS 3813, at *5 (S.D.N.Y. Apr. 9, 1990), aff'd, 916 F.2d 709 (2d Cir. 1990) ("an employer is allowed to misjudge the worth of its employees, so long as its evaluation is not based on a discriminatory purpose").

To satisfy the third element of her *prima facie* claim, Plaintiff identifies two adverse actions: Passero's decision to terminate Plaintiff and Morse's decision to discontinue the notice period. It is undisputed that these actions were taken and that they constitute adverse employment actions.

Plaintiff cannot satisfy the fourth element – an inference of discrimination – with respect to either action. Plaintiff cites only two specific instances of alleged discriminatory conduct: (1) Passero mimicking Plaintiff's pronunciation of the word "roof" in September 2001 and (2) Passero's comment, "You and that education, it must be a Haitian thing." (Pl . Dep. Tr. at 136, 138, 158.) Although Plaintiff alleges that Passero made references to her Haitian national origin on other occasions, she was unable to identify any other specific instances. (Pl. Dep. Tr. at 141, 157, 292-93.) There is no basis to infer that Morse's decision to discontinue the notice period was based at all on racial animus (as opposed to retaliatory animus, which I address below).

In the absence of a clearly demonstrated nexus to an adverse employment action, stray workplace remarks are insufficient to defeat a summary judgment motion. Danzer v. Norden Sys., Inc., 151 F.3d 50, 56 (2d Cir. 1998). These two isolated incidents, which occurred at least five months before Plaintiff's termination, are not sufficient to create an inference of

discrimination.[7]  A single incident of mimicking is insufficient to prove a *prima facie* case.

Manessi v. New York City Dept. of Transp., No. 02-Civ.-359 (SAS), 2003 U.S. Dist. LEXIS

1921, at *23-24 (S.D.N.Y. Feb. 10, 2003); Watt v. New York Botanical Garden, No. 98-Civ.-

1095 (BSJ), 2000 U.S. Dist. LEXIS 1611, at *22 (S.D.N.Y. Feb. 15, 2000) (holding that it would

be an "inferential leap" to infer that a comment about an employee's accent suggests an

underlying bias against persons of that national origin).  Additionally, Passero's comment

regarding Plaintiff's education is too ambiguous and remote in time from Plaintiff's termination

to permit an inference that the termination was discriminatory.  See Muse v. New York City

Dep't of Hous. Pres., No. 96-CV-6221 (FB) (ASC), 2000 U.S. Dist. LEXIS 12207, at * 11

(E.D.N.Y. Aug. 22, 2000) (holding that plaintiff's allegation that supervisor called him a "damn

Haitian" several months before his termination "is the kind of isolated and stray remark

insufficient, without more, to raise an inference of discrimination").

There is a preference against finding racial bias when either (1) the person who fired a

plaintiff is the same person who hired her, Grady v. Affiliated Cent., Inc., 130 F.3d 553, 560 (2d

Cir. 1997), or (2) the plaintiff's replacement is a member of the same protected class as Plaintiff,

Ticali v. Roman Catholic Archdiocese of Brooklyn, 41 F. Supp. 2d 249, 262 (E.D.N.Y. 1999).

---

[7] Plaintiff does not assert a hostile work environment claim, and these two incidents are insufficient to prove such a claim.  In order to prevail on a hostile work environment claim, a plaintiff must show (1) that the harassment was "sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment" and (2) "a specific basis for imputing the conduct creating the hostile work environment to the employer."  Feingold v. New York, 366 F.3d 138, 149-50 (2d Cir. 2004) (citing Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 78 (1998)); Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002).  Two comments during a seven-year working relationship do not constitute "a steady barrage of opprobrious racial comments."  Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir.1997) (twelve racially offensive comments over twenty months may constitute a hostile work environment).

Both circumstances are present in this case. It is not disputed that Passero was the individual who decided to both promote and terminate Plaintiff, nor is it disputed that Plaintiff's replacement was also Black. (Passero Aff. ¶ 84.)

Plaintiff has not shown sufficient evidence to state a *prima facie* claim of discrimination. Even if Plaintiff had stated a *prima facie* claim, Defendants present legitimate and nondiscriminatory reasons for their actions, which Plaintiff cannot prove are merely pretextual. The record is full of evidence that Plaintiff did not satisfactorily perform her job as supervisor. Between December 2000 and April 2002, Passero informed Plaintiff on ten separate occasions that she was not properly performing her duties. (Passero Aff. ¶¶ 25-51, Exs. B-F, J-M.) Plaintiff concedes this. (Pl. Dep. Tr. at 81-86, 102, 128-29, 160-63, 309-10.) She offers no proof that Passero's contemporaneous impressions were pretextual.

Plaintiff must prove "by a preponderance of the evidence, that the reason for the adverse employment decision was discrimination." <u>Mandell v. County of Suffolk</u>, 316 F.3d 368, 381 (2d Cir. 2000). She has not done so. Summary judgment is not appropriate when a plaintiff creates only weak issues of fact regarding an employer's legitimate reason and there is independent evidence that no discrimination occurred. <u>Schnabel v. Abramson</u>, 232 F.3d 83, 90 (2d Cir. 2000) (<u>citing</u> <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 148 (2000)). For all of these reasons, all of Plaintiff's claims based on discrimination are dismissed.

### C.    Retaliation

#### 1.    Legal Standard

The <u>McDonnell Douglas</u> burden-shifting framework applies to retaliation claims.  <u>Quinn v. Green Tree Credit Corp.</u>, 159 F.3d 759, 764 (2d Cir. 1998).  To state a *prima facie* claim of retaliation, an employee must cite evidence sufficient to permit a rational trier of fact to find that (1) "he engaged in protected participation or opposition under Title VII," (2) "the employer was aware of this activity," (3) "the employer took adverse action against the plaintiff," and (4) "a causal connection exists between the protected activity and the adverse action, *i.e.*, that a retaliatory motive played a part in the adverse employment action."  <u>Kessler v. Westchester County Dept. of Social Servs.</u>, 461 F.3d 199, 205-06 (2d Cir. 2006).

#### 2.    Plaintiff's Termination

Plaintiff cannot state a *prima facie* claim that her termination (as distinct from the discontinuance, which is addressed below) was retaliatory because she does not present any evidence suggesting that she engaged in protected activity prior to her termination.  Protected activity refers to action taken to protest or oppose statutorily-prohibited discrimination.  <u>Cruz</u>, 202 F.3d at 566.  The Second Circuit requires that an employer could have reasonably understood that a plaintiff's opposition "was directed by conduct prohibited by Title VII."  <u>Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.</u>, 136 F.3d 276, 292 (2d Cir. 1998).  Plaintiff testified that she complained about Passero two times prior to her termination.  She testified that neither in her complaint to Hebela in October 2001 nor in her complaint to Schmitt in December 2001 did she mention that she believed Passero was discriminating against her.  Complaining about mimicking or screaming after the holiday party cannot be seen as opposing action

prohibited under Title VII, because Title VII is not a "general civility code." Onacle v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998). Further, Passero, who made the decision to terminate Plaintiff, was not even aware that Plaintiff had complained to Hebela and Schmitt. (Passero Dep. Tr. at 149-53.) Plaintiff therefore cannot prove the first two elements of her *prima facie* claim.

Plaintiff's termination is clearly an adverse action, however, which means that Plaintiff can satisfy the third element. Plaintiff cannot, however, prove a causal nexus between the alleged protected activity and her termination. Plaintiff testified that she believed Passero's decision to terminate her was based on her questioning the accuracy of the billing reports at the March 26, 2002 meeting. (Pl. Dep. Tr. at 303-04.) When the record demonstrates that a plaintiff was terminated because she accused her supervisor of mismanagement (rather than discrimination), there is no causal nexus linking the protected activity and the termination. Regis v. Metro. Jewish Geriatric Ctr., No. 97-CV-0906 (ILG), 2000 U.S. Dist. LEXIS 2215, at *25, 37 (E.D.N.Y. Jan. 11, 2000). Moreover, Plaintiff cannot prove causation through temporal proximity. A period of three months or more between the protected activity and the adverse action is insufficient, Pender v. Potter, No. 03-CV-1595 (NGG) (LB), 2005 U.S. Dist. LEXIS 8752, at *10 (E.D.N.Y. May 4, 2005) (citing Hollander v. American Cyanamid Co., 895 F.2d 80, 85-86 (2d Cir. 1990)), and Plaintiff alleges that she engaged in "protected activity" on December 13, 2001, four months before she was terminated.[8] For all of these reasons, Plaintiff's claim that her termination, as expressed by Passero on April 12, 2002, was based on retaliation is dismissed.

---

[8] As noted in the previous section, Defendants proffer a legitimate reason (Plaintiff's poor performance) for Plaintiff's termination, which Plaintiff has not shown to be pretextual.

### 3.    The Discontinuance

Plaintiff can state a *prima facie* claim of retaliation against Kingsbrook and Morse regarding the decision to discontinue the notice period.[9]  In her Declaration, Plaintiff claims that she informed Morse of Passero's alleged discrimination at the May 1, 2002 meeting, two days before Morse effected the discontinuance.[10]  (Pl. Decl. ¶ 11.)  At her deposition, Plaintiff testified that at the May 3, 2002 meeting, she informed Morse of Passero's discrimination before Morse decided to discontinue the notice period.  (Pl. Dep. Tr. 236-38.)  Plaintiff can therefore prove the first element of her *prima facie* claim.

Turning to the second element – that the employer was aware of the employee's protected activity – Defendants insist that Plaintiff did not allege discrimination or express an intent to file a formal complaint until after Morse told Plaintiff that he would discontinue the notice period.  (Defs. 56.1 St. ¶¶ 145-46.)  At the summary judgment stage, however, all legitimate disputes of material fact must be resolved in favor of the non-moving party.  Anderson, 477 U.S. at 255.

---

[9]  "A plaintiff may prevail on a claim for retaliation even when the underlying conduct complained of was not in fact unlawful 'so long as he can establish that he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated [the] law.'"  Treglia v. Town of Manilus, 313 F.3d 713, 719 (2d Cir. 2002) (quoting Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 159 (2d Cir. 1999)).  Defendants have not produced any evidence to show that Plaintiff lacked a good faith belief that Defendants violated the law.

[10]  There is good reason to be skeptical of this claim.  Plaintiff did not allege in her EEOC charge, Complaint, or deposition testimony that she mentioned Passero's alleged discrimination to Morse at the May 1, 2002 meeting.  This fact was first alleged in Plaintiff's Declaration, submitted almost five years after the incident, which appears to contradict her deposition testimony (Pl. Dep. Tr. at 234) and so may be rejected by the court on summary judgment.  Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001); Hayes v. New York City Dept. of Corrs., 84 F.3d 614, 619 (2d Cir. 1996) ("If a party could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.").  In an abundance of caution, however, the court will assume that the facts are as Plaintiff claims.

Therefore, this court finds that Plaintiff has asserted sufficient facts to prove Kingsbrook and Morse were aware of Plaintiff's protected activity, satisfying the second element of Plaintiff's *prima facie* case.

Plaintiff can satisfy the third element of her *prima facie* claim because discontinuing the notice period deprived Plaintiff of more than two months of employment while she searched for a new job. Plaintiff can satisfy the fourth element of her *prima facie* claim because the temporal proximity of Plaintiff's protected activity to Morse's decision to discontinue the notice period is sufficient to permit a reasonable juror to infer a causal connection between the two.

Defendants assert a nonretaliatory reason for the discontinuance. They claim that Morse's decision to discontinue the notice period was based on the hostility he observed between Plaintiff and Passero at the May 3, 2002 meeting. (Morse Dep. Tr. at 46-47.) According to Defendants, Morse concluded based on this hostility that it would not be prudent for Plaintiff and Passero to continue working together any longer. (Id.)

Plaintiff bears the burden of showing that this reason was pretextual. According to Plaintiff, Morse's decision to discontinue the notice period was immediately preceded by Plaintiff's complaint of discrimination and her statement of intent to file a formal complaint. (Pl. Dep. Tr. at 236-38.) The close temporal proximity of Plaintiff's protected activity and the adverse action is sufficient to permit an inference that Morse's nonretaliatory reason was a pretext for retaliation. O'Neal v. State Univ. Of New York, No. 01-CV-7802 (DGT), 2006 U.S. Dist. LEXIS 81654, at *47 (E.D.N.Y. Nov. 8, 2006) (citing Quinn v. Green Tree Credit Corp., 159 F.3d 759, 770 (2d Cir. 1998), abrogated on other grounds in part, AMTRAK v. Morgan, 536 U.S. 101, 120 (2002) (holding that the evidence suggested a "strong correlation between"

plaintiff's complaints and her termination where complaints and termination occurred less than two months apart and nearly all of the evidence supporting defendant's asserted non-discriminatory reasons for the discharge were generated by two of the alleged harassers)). Summary judgment on Plaintiff's retaliation claim regarding the discontinuation of the notice period is therefore denied.

**D.    Individual Liability**

Plaintiff alleges that Passero and Morse are individually liable for violating the NYSHRL and the NYCHRL.[11]  (Compl. at 1.)  Morse argues that he cannot be individually liable under either statute.  (Morse Br. at 13.)  Under the NYSHRL, it is unlawful "for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article or to attempt to do so."  N.Y. Exec. Law § 296(6).  The NYCHRL uses virtually identical language, see N.Y. City Admin. Code § 8-107(6), and is subject to the same analysis as the NYSHRL.  See McCoy v. City of New York, 131 F. Supp. 2d 363, 375 (E.D.N.Y. 2001) (applying the same standard to claims under Section 296(6) and Section 8-107(6)); Mohamed v. Marriott Int'l, Inc., 905 F. Supp. 141, 157 (S.D.N.Y. 1995) (noting that the identical wording of the NYSHRL and NYCHRL evidence "clear intent" for parallel interpretation).

---

[11] It is well settled that "an individual defendant cannot be held personally liable under Title VII."  Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 608 n.8 (2d Cir. 2006); Arculeo v. On-Site Sales & Mktg., LLC, 425 F.3d 193, 195 n.2 (2d Cir. 2005); Patterson v. County of Oneida, 375 F.3d 206, 221 (2d Cir. 2004); Mandell v. County of Suffolk, 316 F.3d 368, 377 (2d Cir. 2003); Tomka v. Seiler Corp., 66 F.3d 1295, 1313-17 (2d Cir. 1995), abrogated on other grounds, Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998).  Plaintiff concedes this point. (Pl. Br. at 8.)  Although NYSHRL and NYCHRL allow for personal liability, violations are still analyzed under the same standards that apply in a Title VII claim.  See Cruz 202 F.3d at 565 n.1. None of Passero's action led to liability for Kingsbrook under Title VII.  She cannot be personally liable under state or city law because Plaintiff has failed to prove that she violated either.

A defendant may also be personally liable under Section 296(1) if he "is shown either to have an ownership interest or the 'power to do more than carry out personnel decisions made by others.'" <u>Gentile v. Town of Huntington</u>, 288 F. Supp. 2d 316, 321 (E.D.N.Y. 2003) (<u>quoting Perks v. Town of Huntington</u>, 251 F. Supp. 2d 1143, 1160 (E.D.N.Y. 2003) (<u>citing Patrowich v. Chemical Bank</u>, 63 N.Y.2d 541, 542, 483 N.Y.S.2d 659, 473 N.E.2d 11 (1984))).  Individual liability under Section 296(1) is limited, however, to supervisors who themselves have the authority to "hire and fire" employees.  <u>Tomka v. Seiler Corp.</u>, 66 F.3d 1295, 1317 (2d Cir. 1995).

Plaintiff has created an issue of material fact regarding Morse's individual liability under the NYSHRL and the NYCHRL.  Morse was solely responsible for the decision to discontinue the notice period.  Plaintiff's testimony that Morse immediately decided to discontinue the notice period after Plaintiff complained of discrimination and stated her intent to file a formal complaint is sufficient to permit an inference that Morse had actual power to make personnel decisions under Section 296(1) and that he was personally responsible for the prohibited action under Section 296(6) and Section 8-107(6).  Plaintiff has therefore set forth sufficient evidence to defeat summary judgment regarding Morse's individual liability under the NYSHRL and the NYCHRL.

**IV.    Morse's Motion to Dismiss**

Morse moves to dismiss the complaint, with prejudice, under Fed. R. Civ. P. 12(b)(2), (4) and (5) for lack of personal jurisdiction and insufficiency of  process and service.  (Morse Br. at 1.)  The applicable Federal Rule provides that–

> If service of the summons and complaint is not made upon a defendant within 120
> days after the filing of the complaint, the court, upon motion or on its own

> initiative after notice to the plaintiff, shall dismiss the action without prejudice as
> to that defendant or direct that service be effected within a specified time; provided
> that if the plaintiff shows good cause for the failure, the court shall extend the time
> for service for an appropriate period.

Fed. R. Civ. P. 4(m). "Even without a finding of good cause, pursuant to the 1993 amendments

to Rule 4(m), the court has the authority to exercise its discretion to deny dismissal." Hollomon

v. City of New York, No. 04-CV-2964 (NG) (JMA), 2006 U.S. Dist. LEXIS 52424, at *10

(E.D.N.Y. July 31, 2006); see also Advisory Committee Notes to Fed. R. Civ. P. 4(m) ("The new

subdivision . . . authorizes the court to relieve a plaintiff of the consequences of an application of

this subdivision even if there is no good cause shown."). Factors for the court to consider when

deciding whether, absent good cause, to exercise its discretion to extend the 120-day period

include–

> (1) whether the applicable statute of limitations would bar the refiled action; (2)
> whether the defendant had actual notice of the claims asserted in the complaint;
> (3) whether the defendant had attempted to conceal the defect in service; and (4)
> whether the defendant would be prejudiced by the granting of plaintiff's request
> for relief from the provision.

Hollomon, at *11 (quoting Eastern Refractories Co. v. Forty Eight Insulations Inc., 187 F.R.D

503, 506 (S.D.N.Y. 1999)). The rationale for extending time is to ensure that potentially

meritorious claims are adjudicated on the merits. AIG Managed Mkt. Neutral Fund v. Askin

Capital Mgmt., L.P., 197 F.R.D. 104, 109-10 (S.D.N.Y. 2000). The Second Circuit has clearly

expressed its preference that disputes be resolved on the merits. Cody v. Mello, 59 F.3d 13, 15

(2d Cir. 1995) ("Dismissal is a harsh remedy only to be utilized in extreme situations."); Enron

Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993) (noting the court's "oft-stated preference

for resolving disputes on the merits").

Plaintiff filed this action on September 21, 2004. (Compl. at 11.) Plaintiff did not serve Morse until May 24, 2005, approximately four months after the expiration of the 120-day period for service. (Berlin Decl. Ex. E.) Although Plaintiff has failed to provide an adequate reason for her untimely service, an analysis of the four factors identified above leads the court to conclude that Plaintiff should be afforded the opportunity to have her claims against Morse decided on the merits. The fact that a refiled claim would be untimely weighs against dismissal.[12] Hollomon, 2006 U.S. Dist. LEXIS 52424, at *12 ("A court should not refuse to extend the time of service simply so that the defendant can benefit from the time-bar."). The second factor also weighs against dismissal because Morse is aware of the action. The third factor weighs in favor of dismissal because there is no evidence that Morse attempted to conceal the fact that service was not timely. The fourth factor weighs against dismissal because Morse does not identify any prejudice that he would suffer if the instant action is allowed to proceed. See AIG Managed Mkt. Neutral Fund, 197 F.R.D. at 111 ("If [defendant] is purporting to assert that not permitting it to take advantage of an expired statute of limitation is itself a form of prejudice, that contention is erroneous."). Therefore, Morse's motion to dismiss is denied.

Passero, Kingsbrook, and Plaintiff have already engaged in extensive discovery. Because Morse was not timely served, he did not participate in this discovery. Although it is unclear what additional information could be uncovered, if Morse believes that additional discovery is appropriate, he should notify the court within ten days of receiving this order. The court will consider permitting Morse to take discovery during some limited, defined period.

---

[12] Plaintiff commenced this action on September 21, 2004, within the three-year period of limitation for her state and city law claims. See Forsyth v. Fed'n Empl. & Guidance Serv., 409 F.3d 565, 572 (2d Cir. 2005).

**V.      Conclusion**

For the reasons set forth above, Kingsbrook's, Passero's, and Morse's motions for summary judgment are GRANTED with respect to discrimination and GRANTED in part and DENIED in part with respect to retaliation.  Morse's motion to dismiss is DENIED.


Dated:  August 10, 2007                                        /s/ Nicholas G. Garaufis
       Brooklyn, N.Y.                                     NICHOLAS G. GARAUFIS
                                        United States District Judge